IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FRESH DIRECT, INC., et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | )   C.A. No. 10-040-GMS |
| | ) |
| HARVIN FOODS, INC., et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM**

## I.    INTRODUCTION

On January 15, 2010, Fresh Direct, Inc. ("Fresh Direct") filed suit against Harvin Foods, Inc. and its principal officer (collectively, "Harvin Foods").[1] In its initial complaint, Fresh Direct sought a temporary restraining order ("TRO") and preliminary injunction to freeze Harvin Foods' assets, based on that company's alleged violation of Section 5(c) of the Perishable Agricultural Commodities Act (the "PACA"), 7 U.S.C. §499e(c).   Specifically, Fresh Direct alleged that Harvin Foods failed to compensate it for produce received and accepted by Harvin Foods and, in so doing, violated the statutory trust ensured by the PACA. (D.I. 1 at 3.)   On January 20, 2010, this court denied Fresh Direct's motion, because it had failed to show that it would be "irreparably harmed" if this court did not grant the injunction. (D.I. 11 at 1.)   In response, Fresh Direct filed an amended complaint, on February 1, 2010, which included Whitmore Distributing Co. ("Whitmore") as a co-plaintiff.   On that same date, Fresh Direct also

---

[1] Fresh Direct's original complaint was filed against Harvin Foods, Keith Harvin, and Grady Harvin. (D.I. 1 at 1.) At the time Fresh Direct filed its complaint, it believed that Keith Harvin and Grady Harvin served as officers and directors of Harvin Foods. (D.I. 8 at 2.) In its reply brief to the preliminary injunction motion, Harvin Foods notes that its principal officer's name is Grady Keith Harvin and refers to Mr. Harvin as "Keith Harvin." (D.I. 26 at 1.)

filed a motion for a preliminary injunction pursuant to Federal Rule of Civil Procedure 65(b). (D.I. 16 at 1.)  On February 15, 2010, Harvin Foods filed an answering brief (D.I. 33) and proposed order asking this court to deny Fresh Direct's request for a preliminary injunction (D.I. 34).  Presently before the court, is Fresh Direct and Whitmore's (collectively, the "plaintiffs") Rule 65(b) preliminary injunction motion to freeze the entirety of Harvin Foods' assets until resolution of this dispute in order to prevent dissipation of the PACA statutory trust.[2]  (D.I. 16.) For the reasons that follow, the court will grant the plaintiffs' motion in part by freezing Harvin Foods' assets in the amount allegedly owed the plaintiffs.

## II.    BACKGROUND

The plaintiffs are produce dealers licensed under the PACA.  (D.I. 17 at 4.)  Harvin Foods is a produce wholesale business that purchases produce from dealers.  The produce is then stored in Harvin Foods' warehouse before it is sold and delivered to restaurants and other customers of Harvin Foods.  (D.I. 20 at 5-6.)  The plaintiffs claim that they collectively delivered $170,720.57 worth of produce to Harvin Foods, which it accepted.  Harvin Foods, however, failed to pay the amount it owed to either party.  (D.I. 17 at 5.)  The produce delivered is subject to the PACA and the plaintiffs note that they preserved their rights in the statutory trust as required under PACA, 7 U.S.C. §499(e)(c), and the relevant accompanying regulations.[3]  The plaintiffs allege that Harvin Foods has refused to pay them, because of an internal dispute with former Harvin Foods' employees.  (D.I. 17 at 3-4; D.I. 20 at 2-4.)

---

[2] According to Fresh Direct and Whitmore, the total amount Harvin Foods owes to both parties is $170,720.57. (D.I. 16 at 2.) Specifically, Fresh Direct alleges that Harvin Foods owes it $113,358.97, and Whitmore claims that Harvin Foods owes it $57,361.60. (D.I. 15 at 3.) Harvin Foods contests the validity of this amount and contends that the amount owed should be determined based upon the price of the produce at delivery rather than the contract price.

[3] The plaintiffs preserved their rights in the statutory trust pursuant to 7 U.S.C. §499(e)(c), 7 C.F.R. Part 46, 49 Fed. Reg. 45735 (Nov. 20, 1984), through the invoices it sent with the produce. (D.I. 17 at 2.)

Harvin Foods does not contest that its refusal to pay the plaintiffs results from a dispute with former employees. (D.I. 20 at 6-7.) Instead, Harvin Foods explains that it has refused to pay the plaintiffs because it did not purchase the produce in question. (Id.) Specifically, Harvin Foods states that the produce purchased from the plaintiffs was ordered by two individuals, Raymond Maragni, Jr. ("Maragni") and Vincenzo Giuffrida ("Giuffrida"), with whom Harvin Foods briefly entered into a food brokerage business. (Id. at 6.) Harvin Foods notes that in or around July 2009, it agreed to enter into a limited affiliation brokerage business with Maragni and Giuffrida, wherein the brokerage business would buy product from vendors that would then be transported by a trucking company from the vendor to the customer. (Id. at 2.) Harvin Foods indicates that the brokerage business initially went well, and Maragni and Giuffrida worked from Harvin Foods' office. (Id.) Maragni and Giuffrida later stopped working from the Harvin Foods' office, however, and became unresponsive when business began to "pick up." (Id.) Soon after, Harvin Foods began receiving complaints from the brokerage business vendors that had not been paid for produce they shipped to Harvin Foods. (Id.) Harvin Food notes that it had not done business with many of these vendors in past. (Id.) Upon investigating the complaints, Harvin Foods learned that Maragni and Giuffrida were fraudulently ordering produce from growers and/or vendors on Harvin Foods' credit, but having brokerage business customers send their payment checks directly to them. (Id.) Harvin Foods then terminated its affiliation with Maragni and Giuffrida and filed a criminal complaint with the Wilmington Police Department to alert them of the fraudulent scheme. (Id. at 3.)

Harvin Foods contends that Maragni and Giuffrida—rather than the company itself—purchased produce from Fresh Direct and Whitmore. Therefore, the plaintiffs are not entitled to payment from Harvin Foods. (Id. at 5.) Conversely, the plaintiffs argue that they are entitled to

such payment and seek a preliminary injunction to preserve the PACA statutory trust by freezing

Harvin Foods' assets.  (D.I. 16; D.I. 17 at 1-2.)

## III.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 65(b) permits a party to seek a preliminary injunction

prior to the resolution of trial proceedings.  Fed. R. Civ. P. 65.  A preliminary injunction is "an

extraordinary remedy, which should be granted only in limited circumstances."  *Frank's GMC

Truck Ctr., Inc. v. Gen. Motors Corp.*, 847 F.2d 100, 102 (3d Cir. 1988) (citation omitted).

Specifically, such injunctive relief should only be granted if: (1) the plaintiff is likely to succeed

on the merits; (2) denial will result in irreparable harm to the plaintiff; (3) granting the

preliminary relief will not result in even greater harm to the nonmoving party; and (4) granting

the injunction is in the public interest.  *See Tanimura & Antle, Inc. v. Packed Fresh Produce,

Inc.*, 222 F.3d 132 (3d Cir. 2000) (citing *Council for Alternative Political Parties v. Hooks*, 121

F.3d 876, 879 (3d Cir. 1997)).  A court should balance these factors in determining whether to

grant a preliminary injunction, and should deny such relief where the plaintiff has failed to

establish each element.  *See NutraSweet Co. v. Vit-Mar Enterprises, Inc.*, 176 F.3d 151, 153 (3d

Cir. 1999); *In re Arthur Treacher's Franchisee Litig.*, 689 F.2d 1137, 1143 (3d Cir. 1982).

## IV.   DISCUSSION

In deciding whether to issue a preliminary injunction under the PACA, the Third Circuit

has required courts to consider the four elements defined in the Standard of Review.  The court

considers each of these elements in turn below.

### A. Likelihood of Success on the Merits

To prove likelihood of success on the merits of a PACA claim, a plaintiff must

demonstrate that it is a PACA trust beneficiary with a perfected interest, and that it is entitled to

4

payment. *Chiquita Brands Co. N.A., Inc. v. Del Monte Fresh Produce, N.A., et al.*, No. Civ. A. 03CV05283, 2004 WL 2536860, at *8 (E.D. Pa. Nov. 8, 2004) (citing *Tanimura,* 222 F.3d at 140). While Harvin Foods does not challenge the plaintiffs' status as PACA trust beneficiaries, it contends that the plaintiffs cannot prove they are entitled to payment from Harvin Foods itself. (D.I. 20 at 5.) Specifically, Harvin Foods argues that the produce orders in question were the result of a scheme to defraud Harvin Foods and its customers, and that the plaintiffs failed to request verification from the officers or owners of Harvin Foods as to whether Maragni and/or Giuffrida were authorized users of Harvin Foods' credit. (Id.) Moreover, Harvin Foods argues that the plaintiffs cannot prove that Harvin Foods actually received the produce in question.

In response to Harvin Foods' contention that they are not entitled to payment because of Maragni and Giuffrida's scheme to defraud the company, the plaintiffs argue that Maragni and Giuffrida were acting in an actual or apparent authority capacity as agents of Harvin Foods. (D.I. 38 at 2-3.) An agency relationship is created when "one party consents to have another act on its behalf, with the principal controlling and directing the acts of the agent." *Fisher v. Townsends, Inc.*, 695 A.2d 53, 57-58 (Del. 1997). Harvin Foods does not contest that Maragni and Giuffrida were agents of the company, but asserts instead that Maragni and Giuffrida did not have actual or apparent authority to purchase produce from the plaintiffs. (D.I. 43 at 4.)

Actual authority is created when the principal's words or conduct would "reasonably cause the agent to determine that the principal wishes the agent to act on the principal's behalf." *Creedon Controls, Inc. v. Banc One Bldg. Corp.*, 470 F. Supp. 2d 457, 460 (D. Del. 2007). Apparent authority is established when the principal, by words or conduct, would cause a third party—here, the plaintiffs—to believe that the agent is acting on the principal's behalf. *Id.* at 460; *Edwards v. Born, Inc.*, 792 F.2d 387, 389-90 (3d Cir. 1986). That is, "[a]pparent authority

5

[is] . . . that authority which, though not actually granted, the principal knowingly or negligently permits the 'agent' to exercise or which he holds him out as possessing." *Old Guard Ins. Co. v. Jimmy's Grille, Inc.*, No. 542, 2004 Del. LEXIS 417, at *10 (Del. Super. Sept. 21, 2004) (quoting *Finnegan Constr. Co. v. Robino-Ladd Co.*, 354 A.2d 142 (Del. Super. Ct. 1976)). If a third party relies on the agent's apparent authority in good faith and does so reasonably in view of the surrounding circumstances, the principal is liable. *Old Guard Ins. Co.*, 2004 Del. LEXIS 417, at *10.

In support of their agency argument, the plaintiffs state that when the orders at issue were placed, Harvin Foods' Blue Book[4] information did not list an Exclusive Buyer, which would have alerted the plaintiffs that Maragni and Giuffrida could not act as buyers.[5]  (D.I. 43 at 5.) Moreover, the plaintiffs note that Maragni and Guiffrida worked from Harvin Foods' offices and operated under the Harvin Foods' name when the orders were placed. (Id. at 5.) In addition, as evidence of Maragni's agency status, the plaintiffs include in their exhibits a Note issued by the United States Department of Agriculture, Agricultural Marketing Service, on December 8, 2009, which shows that Harvin Foods posted a $40,000 bond to hire Maragni as an employee, as well as a December 2, 2009 facsimile from Harvin Foods' President, Keith Harvin, to Fresh Direct indicating that Maragni was authorized to purchase on the company's behalf.[6]  (D.I. 39 at 10, Exhibit 3.)  Whitmore also has produced evidence of a similar communication with Harvin

---

[4] Blue Book Services, Inc. is a credit and marketing information service that provides information and ratings on companies in the international wholesale produce industry.

[5] Keith Harvin was not listed in the Blue Book as Harvin Foods' "Exclusive Buyer" until December 10, 2009, which is after the plaintiffs made the produce purchases at issue in the present case. (D.I. 38 at 9.)

[6] Keith Harvin sent a separate facsimile to Fresh Direct, on December 8, 2009, indicating that Maragni's authority was no longer valid. (D.I. 39 at 12, Exhibit 4.)  Harvin Foods alleges that because Keith Harvin's communication with Fresh Direct authorizing Maragni to purchase on the company's behalf was sent after the produce orders at issue were placed, Fresh Direct had no reason to believe that Maragni was an authorized buyer at the time of the purchases.  (D.I. 43 at 5-6.)  In light of the surrounding circumstances detailed, however, the court concludes that the plaintiffs' belief that Maragni and Giuffrida were agents of Harvin Foods at the time of the purchases was not unreasonable.

6

Foods, wherein Keith Harvin emailed it, on December 1, 2009, to indicate that Giuffrida had not collected payment from Harvin Foods' customers for the produce purchased, but that Whitmore would be paid when the money was received. (D.I. 38 at 10.) The plaintiffs further note that Harvin Foods did not contest any of the invoices sent by the plaintiffs to Harvin Foods' business address prior to identifying Maragni and Giuffrida's fraudulent scheme, and did not terminate its relationship with the two individuals until after the orders at issue were placed. (Id. at 11.)

Given these facts, governing authority would seem to suggest that Maragni and Giuffrida were, indeed, acting as agents of Harvin Foods, that the plaintiffs relied in good faith on the belief that these two individuals were authorized Harvin Foods buyers, and that the plaintiffs preserved their interest in the PACA trust pursuant to the relevant statute and regulations. Thus, the court concludes that Fresh Direct and Whitmore have shown a likelihood of success on the merits of their claim.

### B. Irreparable Harm

In order for the court to grant a preliminary injunction for a PACA claim, the plaintiff must show that it will be irreparably harmed by the denial of such relief. *See Tanimura*, 222 F.3d at 140. The Third Circuit has recognized that PACA trust dissipation can constitute irreparable harm, and further that such "dissipation . . . can render money damages inadequate, thereby necessitating equitable relief, especially when the dissipation will clearly result in the debtor's inability to make payment." *Id.* at 139-40. Trust dissipation is defined as "any act or failure to act which could result in the diversion of trust assets or which could prejudice or impair the ability of unpaid suppliers, sellers, or agents to recover money owed in connection with a produce transaction." 7 C.F.R. § 46.46(a)(2).

In their preliminary injunction motion, the plaintiffs contend that they meet the irreparable harm requirement because Harvin Foods has failed to pay either company in direct violation of the PACA, and has not provided evidence of the availability of sufficient funds to pay the plaintiffs or similarly situated creditors. (D.I. 17 at 9.)  Moreover, the declaration of Angel Ruiz, president of Fresh Direct, which the plaintiffs offer in support of their motion, has attached as an exhibit a Blue Book Services report which shows that Harvin Foods' credit rating has declined since December 2009, and that its rating is under investigation because it has been categorized as a "reported slow payer." (D.I. 18 at 24.)

Harvin Foods counters that a preliminary injunction is unwarranted, because money damages would provide an adequate remedy should the plaintiffs ultimately succeed on the merits. (D.I. 43 at 7.)  To support this assertion, Harvin Foods presents an affidavit by Keith Harvin, stating that Harvin Foods has "substantial current assets in excess of $200,000, and is not insolvent or in danger of filing bankruptcy." (Id. at Exhibit 4.)  The Third Circuit in *Tanimura & Antle, Inc. v. Packed Fresh Produce, Inc.*, however, established that trust dissipation can warrant a preliminary injunction even where money damages are the appropriate relief.  *See Tanimura*, 222 F.3d at 140.

The record before the court contains evidence that the plaintiffs could be prejudiced or impaired in their ability to "recover money owed in connection with [the] produce transaction." *See* 7 C.F.R. §46.46(a)(2).  In addition, Harvin Foods' has refused to pay the plaintiffs for produce ordered by those seemingly acting as its agents, and the plaintiffs have adduced evidence of Harvin Foods' decreasing credit rating.  Under these circumstances, the plaintiffs have demonstrated the potential that they may suffer irreparable harm.

## C. Greater Harm to the Non-Moving Party

Harvin Foods further argues that the court should deny the plaintiffs' preliminary injunction motion, because granting the motion would result in harm to Harvin Foods that significantly outweighs any harm to the plaintiffs that would result from the denial. (D.I. 33 at 11.) Specifically, Harvin Foods notes that if the court grants a preliminary injunction freezing the entirety of its assets, the company will be unable to conduct its business and pay its employees and creditors. (Id.) According to the Third Circuit, injunctive relief should not be granted where such relief would result in a greater harm to the non-moving party. *Tanimura*, 222 F.3d at 140 (citing *Hooks*, 121 F.3d at 879). In light of this standard and Harvin Foods' argument, the court will only freeze the assets of Harvin Foods in the amount allegedly owed to Fresh Direct and Whitmore, pending the final outcome of this action.

## D. Public Interest

Finally, in determining whether to grant a preliminary injunction, the Third Circuit directs that courts should consider if doing so would be in the public interest. *See Tanimura*, 222 F.3d at 140. With respect to this element, Harvin Foods argues that the public interest here favors protecting the company as a victim of fraud, rather than punishing it by freezing its assets. (D.I. 33 at 12.) In support of this contention, Harvin Foods provides two quotations from 49 Federal Regulation 45737, indicating that the PACA was enacted to "suppress unfair and fraudulent practices" and to "aid traders in enforcing contracts." 49 Fed. Reg. 45735.

Conversely, the plaintiffs maintain that the Third Circuit has held that Congress passed the PACA to protect "small suppliers who could not withstand a significant loss or delay in receipt of monies owed," and that the public interest, therefore, favors granting a preliminary injunction. (D.I. 17 at 9-11.); *Tanimura*, 222 F.3d at 135. Indeed, the Federal Regulation that

9

Harvin Foods cites supports the plaintiffs' position. Specifically, the Regulation states that Congress enacted the PACA trust provision in recognition of "changes in the [produce] industry's financial picture [that have] added an abnormal marketing risk burden against which sellers are unable to protect themselves," such as the "marked increase in delayed payments for produce." 49 Fed. Reg. 45735. In view of the Third Circuit precedent in this area and Congress' intent in enacting the PACA, it is clear that the public interest supports preserving the trust from possible dissipation to protect the produce seller, or Fresh Direct and Whitmore, in this case.

## VI. CONCLUSION

Because the court concludes that the plaintiffs have demonstrated a likelihood of success on the merits and irreparable harm, and because the remaining factors weigh in favor of a preliminary injunction, the court will grant the plaintiffs' request. In view of the fact that freezing the entirety of Harvin Foods' assets will not permit it to conduct its business or pay its employees and creditors, however, the court will freeze Harvin Foods' assets only in the amount allegedly owed to the plaintiffs, or $170,720.57. Accordingly, the court will grant in part and deny in part the plaintiffs' motion for a preliminary injunction pursuant to Rule 65(b).

Dated: June 22, 2010

CHIEF, UNITED STATES DISTRICT COURT

10

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FRESH DIRECT, INC., et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) C.A. No. 10-040-GMS |
| | ) |
| HARVIN FOODS, INC., et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

## **ORDER**

For the reasons stated in the court's Memorandum of this same date, IT IS HEREBY ORDERED that:

1.  Fresh Direct, Inc. and Whitmore Distributing, Co.'s motion for a preliminary injunction (D.I. 16) is GRANTED in part and DENIED in part. The court will freeze Harvin Foods' assets in the amount allegedly owed to the plaintiffs, or $170,720.57.

Dated: June 22, 2010

_____
CHIEF, UNITED STATES DISTRICT COURT