IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FRESH DIRECT, INC., et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | C.A. No. 10-040-GMS |
| ) | |
| HARVIN FOODS, INC., et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM

### I. INTRODUCTION

Plaintiff, Fresh Direct, Inc., et al. ("Fresh Direct"), filed this action against defendant, Harvin Foods, Inc., et al. ("Harvin Foods"), alleging a breach of the Perishable Agriculture Commodities Act, 7 U.S.C. §§ 499a-499t. (D.I. 47 at 4.)

Defendant, Harvin Foods, counterclaims that Fresh Direct was negligent. Harvin Foods claims that Fresh Direct had a duty to verify that Raymond Maragni, Jr. and Vincent Giuffrida—salesmen in the food brokerage business—were authorized to make purchases on behalf of Harvin Foods. (D.I. 48 at 7.) Harvin Foods claims that Fresh Direct breached this duty and as a result, caused injury, "including but not limited to damage to its credit rating, reputation and loss of goodwill." (*Id.*) Presently before the court is Fresh Direct's motion to dismiss Harvin Foods' counterclaim pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

## II. BACKGROUND

Harvin Foods is in the wholesale produce business, and purchases produce from vendors, which is shipped to and stored in its warehouse, until it is ultimately sold and delivered to customers. (D.I. 48 at 5.) During the summer of 2009, Harvin Foods agreed to enter the food brokerage business through a limited arrangement with Maragni and Giuffrida, two businessmen in that industry. (*Id.* at 6.) In a food brokerage business, food is purchased from vendors and shipped directly to the customer. (*Id.*) Prior to this time, Harvin Foods had never been involved in that aspect of the food industry. (*Id.*)

For the first couple of weeks, the arrangement operated without incident. (D.I. 48 at 6.) Maragni and Giuffrida then stopped showing up to work, and did not respond to Harvin Foods' efforts to contact them. (*Id.*) Vendors began to lodge complaints against Harvin Foods claiming that they had not been paid for produce that Maragni and/or Giuffrida had ordered. (*Id.*)

Thereafter, Harvin Foods learned that Maragni and Giuffrida had been using its credit to fraudulently order produce from growers and/or vendors. (*Id.* at 7.) Moreover, the vendors had been sending their payment checks to Maragni and/or Giuffrida. (*Id.*) After discovering this scheme, Harvin Foods terminated the limited arrangement with Maragni and Giuffrida, and made numerous efforts to put a stop to the fraud. (D.I. 48 at 7.) Those efforts included terminating the limited arrangement with Maragni and Giuffrida, and filing a criminal complaint with the Wilmington Police Department. (*Id.*) Fresh Direct claims that Harvin Foods, by and through Maragni and/or Giuffrida, ordered produce from them in the respective aggregate amounts of $113,358.97 and $57,361.60, which it claims is due and outstanding. (*Id.*) Fresh Direct initiated this suit to recover those amounts. (D.I. 47 at 4.)

Harvin Foods filed a counterclaim against Fresh Direct alleging that it was negligent by breaching its "duty to verify that Maragni and Giuffrida were authorized to make purchases on behalf of Harvin Foods and/or use the credit of Harvin Foods before making any alleged sales to Harvin Foods through Maragni and/or Giuffrida." (D.I. 48 at 7.) Harvin Foods claims that Fresh Direct breached this duty and that this was both the factual and proximate cause of the injury it sustained, which "includ[ed] damage to its credit rating, reputation and loss of goodwill." (*Id.* at 11.) Harvin Foods claims that "had [Fresh Direct] taken any actions to confirm the false representations of authority made by Maragni and Giuffrida, both [Fresh Direct] and Harvin Foods would have been alerted to Maragni and Giuffrida's fraudulent scheme and neither party would have sustained the damages to the extent complained of in this matter." (*Id.* at 12.)

Fresh Direct contends that there is no such "duty to verify." (D.I. 47 at 5.) Fresh Direct also claims that even if there was such a duty, its actions were not a proximate cause of Harvin Foods' injury. (*Id.*) Fresh Direct therefore asks this court to dismiss Harvin Foods' counterclaim.

## III. STANDARD OF REVIEW

In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), all factual allegations are taken as true and construed in the light most favorable to the non-moving party. *Gross v. German Found. Indus. Initiative*, 549 F.3d 605, 610 (3d Cir. 2008). To state a claim adequately, there "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). It must be shown that there are sufficient "facts to state a claim that is plausible on its face." *Id.* at 547. A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). There must

3

be "enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element. *Bell*, 550 U.S. at 545.

## IV. DISCUSSION

To state a claim for negligence, the injured party must allege that (1) the wrongdoer owed the injured party a duty of care, (2) the wrongdoer breached that duty, and (3) the wrongdoer's breach was the proximate cause of the harm sustained by the injured party. *Halchuck v. Williams*, 635 F. Supp. 2d 344, 346 (D.Del. 2009).

### A. Duty to Verify

Harvin Foods contends that Fresh Direct had a duty to verify, which is based upon a "reasonableness" or an industry standard. (D.I. 48 at 9-10.) However, in support of its contention that there is a duty to verify, Harvin Foods cites to cases that do not relate to the duty of, or transactions between, merchants. (*Id.* at 9.) Instead, Harvin Foods cites a case discussing the duty of an owner or general contractor to protect the employees of an independent contractor from the hazards of completing a contract. *Hawthorne v. Edis Co.*, 2003 WL 23009254, at *9 (Del. Super. Ct. 2003). It also cites a case discussing the duty of a reasonably prudent manufacturer under all the particular factual circumstances of that case. *Massey-Ferguson, Inc. v. Wells*, 383 A.2d 640, 642 (Del. 1978). Another case it cites discusses the duty of manufacturers when designing a product. *McLaughlin v. Dover Downs, Inc.*, 2008 WL 2943392, at *13 (Del. Super. Ct. 2008).

Nevertheless, Harvin Foods correctly notes that in Delaware, duty is measured in terms of reasonableness. "One's duty is to act reasonably, as a reasonably prudent man (or entity) would." *Delmarva Power & Light Co. v. Burrows*, 435 A.2d 716, 718 (Del. 1981). While Harvin Foods does not cite to any case law governing the duty of merchants, it claims that "[a]

4

reasonably prudent produce seller would not enter into a business transaction with a company – with which they have never before done business – without first verifying that the persons with whom they are dealing have the authority to make decisions on behalf of the company." (D.I. 48 at 9.) Harvin Foods also references the Blue Book, which provides information and ratings on companies in the international wholesale produce industry to suggest that in this context, to act reasonably, one should reference the listed buyers in the Blue Book. (*Id.* at 10.)

Since all factual allegations are taken as true and construed in the light most favorable to the non-moving party, here, Harvin Foods, it is plausible that merchants in the food business have a duty to verify based on (1) reasonableness or (2) industry standard. Harvin Foods contends that there is a duty to verify who is an authorized buyer, and that Fresh Direct should have used the Blue Book to do so. (D.I. 26 at 11.) Further, Harvin Foods alleges that Fresh Direct did not verify whether Maragni and/or Giuffrida were authorized to make purchases on behalf of Harvin Foods or to use their credit. (*Id.*) As such, there is a reasonable expectation that with discovery, a duty to verify will be revealed. *Bell*, 550 U.S. at 545.

## B. Proximate Cause

Based on Harvin Foods' factual allegations, it is plausible that Fresh Direct's omissions were a proximate cause of the injury it suffered. Harvin Foods alleges "damages, including damage to its credit rating, reputation, [and] loss of goodwill" as a proximate result of Fresh Direct's breach of the duty to verify. (D.I. 26 at 12.) Harvin Foods contends that "had Plaintiffs taken any actions to confirm the false representations of authority made by Maragni and Giuffrida, both Plaintiffs and Harvin Foods would have been alerted to Maragni and Giuffrida's fraudulent scheme and neither party would have sustained the damages to the extent complained of in this matter." (D.I. 48 at 12.)

5

Proximate cause is "the direct cause without which the injury would not have occurred." *Drummond v. Delaware Transit Corp.*, 365 F. Supp. 2d 581, 585 (D.Del. 2005). The proximate cause must occur "in a natural and continuous sequence, unbroken by any intervening cause, produc[ing] the injury." *Id.* If there was an intervening cause, "the causal chain is not automatically broken, as there may be more than one proximate cause to an injury." *Halchuck*, 635 F. Supp. 2d at 347. An intervening act must have been unforeseeable to the original tortfeasor to break the causal chain. *Id.*

If Fresh Direct had a duty to verify, and that duty was breached, then it is plausible that Fresh Direct was the proximate cause of the injury suffered by Harvin Foods, since its omission might have been a cause of Harvin Foods' injuries.

## V. CONCLUSION

For the reasons stated above, Fresh Direct's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is denied.

Dated: March ___9___, 2012

CHIEF, UNITED STATES DISTRICT JUDGE

6

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FRESH DIRECT, INC., et al., )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>)<br>HARVIN FOODS, INC., et al., )<br>)<br>Defendants. )<br>) | C.A. No. 10-040-GMS |

## ORDER

For the reasons stated in the court's Memorandum of this same date, IT IS HEREBY ORDERED that:

1. Fresh Direct Inc.'s Motion to Dismiss Harvin Foods Inc.'s counterclaim (D.I. 46) is DENIED; and

2. Foodsource's Motion to File an Amended Complaint (D.I. 84) is GRANTED.[1]

Dated: March 9, 2012

CHIEF, UNITED STATES DISTRICT JUDGE

---

[1] Federal Rule of Civil Procedure provides that leave should be freely granted when justice so requires. This is the first time Foodsource has sought leave to amend its Complaint, and seeks to do so in order to correct an error in the identity of the individual defendant. Furthermore, the motion is unopposed and does not prejudice any other party.