IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FRESH DIRECT, INC., et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) C.A. No. 10-040-GMS |
| | ) |
| HARVIN FOODS, INC., et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM**

## I. INTRODUCTION

On January 15, 2010, Fresh Direct, Inc. ("Fresh Direct") filed suit against Harvin Foods, Inc. and its principal officer, Grady Keith Harvin, (collectively, "Harvin Foods"). In its initial complaint, Fresh Direct sought a temporary restraining order ("TRO") and preliminary injunction to freeze Harvin Foods' assets, based on that company's alleged violation of Section 5(c) of the Perishable Agricultural Commodities Act (the "PACA"), 7 U.S.C. §499e(c). Specifically, Fresh Direct alleged that Harvin Foods failed to compensate it for produce received and accepted by Harvin Foods and, in so doing, violated the statutory trust ensured by PACA. (D.I. 1 at 3.)

On February 1, 2010, Fresh Direct filed an amended Complaint, adding Whitmore Distributing Co. ("Whitmore"), Philadelphia Produce Credit Bureau ("PPCB"), and Champion Produce Sales Inc. ("Champion") as Plaintiffs. (D.I. 15). Plaintiffs filed an amended motion for preliminary injunction. (D.I. 16). The court granted Plaintiffs motion in part by freezing Harvin Foods' assets in the amount allegedly owed to Plaintiffs—$170,720.57. (D.I. 53). On December 8, 2010, Foodsource filed a motion to consolidate its case, Case No. 1:10-cv-00439-GMS, with

the present action. (D.I. 66). The court granted Foodsource's motion on April 5, 2011. (D.I. 75). After filing another amended Complaint, Plaintiffs again filed an amended motion for preliminary injunction. (D.I. 70). On March 30, 2012, the court granted Plaintiffs' amended motion for preliminary injunction, ordering that "all funds belonging or owing to Harvin Foods, Inc. . . . up to and including $294,543.62, shall be immediately paid to Kate Ellis, Esq., McCarron & Diess, attorneys for Plaintiffs, to be held for the benefit of Plaintiffs pending further court order." (D.I. 102).

A third amended Complaint was filed, adding Wilmington Savings Fund Society, FSB ("WSFS") as defendant. (D.I. 111). Plaintiffs and Defendant WSFS came to an agreement on November 13, 2013, whereby WSFS agreed to settle Plaintiffs' claims against WSFS for a total payment of $300,301.47. (D. I. 164 at 1). Pursuant to the stipulation Plaintiffs and WSFS filed, WSFS was dismissed from the case. (D.I. 147). On December 29, 2014, the court granted in-part and denied in-part Plaintiffs' Motion for Default Judgment and for Disbursement of Trust Funds. (D.I. 161). Plaintiffs' request for default judgment was denied as to Mr. Harvin, but granted as to Harvin Foods, Harvin Partners, Harvin Properties, and KH Foods. *Id.* The court ordered that "Defendants owed Plaintiffs the aggregate sum of $214,146.64 as a trust debt under Section 5(c) of the Perishable Agricultural Commodities Act, 7 U.S.C. § 499e(c)(2)." (D.I. 162 at 1). Presently before this court is Plaintiffs' motion for summary judgment against the sole remaining Defendant, Grady Keith Harvin ("Mr. Harvin"), filed on April 29, 2016. (D.I. 163). For the reasons that follow, the court will grant Plaintiffs' motion.

## II. BACKGROUND

The plaintiffs are produce dealers licensed under PACA. (D.I. 17 at 4). Harvin Foods is a licensed produce wholesale dealer and broker under PACA. (D.I. 9, Ex. 1). Mr. Harvin is the

President, (D.I. 21 ¶ 2), and sole owner of Harvin Foods. (D.I. 153 ¶ 5(e)). He was also the only principal reported on Harvin Foods' PACA license. (D.I. 9, Ex. 1). The produce that Harvin Foods receives is stored in Harvin Foods' warehouse before it is sold and delivered to restaurants and other customers of Harvin Foods. (D.I. 20 at 5–6). The plaintiffs claim that they collectively delivered $246,901.47 worth of produce to Harvin Foods, and Harvin Foods accepted those deliveries. (D.I. 111 ¶ 7). Harvin Foods, however, failed to pay the amount it owed to for the produce. *Id.* The produce delivered is subject to the PACA and the plaintiffs note that they preserved their rights in the statutory trust as required under PACA, 7 U.S.C. §499(e)(c), and the relevant accompanying regulations.[1] (D.I. 111 ¶¶ 8–9). The plaintiffs allege that Harvin Foods has refused to pay them, because of an internal dispute with former Harvin Foods' employees. (D.I. 17 at 3–4; D.I. 20 at 2–4).

Harvin Foods does not contest that its refusal to pay the plaintiffs results from a dispute with former employees. (D.I. 20 at 6–7). Specifically, Harvin Foods states that the produce purchased from the plaintiffs was ordered by two individuals, Raymond Maragni, Jr. ("Maragni") and Vincenzo Giuffrida ("Giuffrida"), with whom Harvin Foods briefly entered into a food brokerage business. *Id.* at 6. Harvin Foods notes that in or around July 2009, it agreed to enter into a limited affiliation brokerage business with Maragni and Giuffrida, wherein the brokerage business would buy product from vendors that would then be transported by a trucking company from the vendor to the customer. *Id.* at 2. Harvin Foods indicates that the brokerage business initially went well, and Maragni and Giuffrida worked from Harvin Foods' office. *Id.* Maragni and Giuffrida later stopped working from the Harvin Foods' office, however, and became unresponsive when business began to "pick up." *Id.* Soon after, Harvin Foods began receiving

---

[1] The plaintiffs preserved their rights in the statutory trust pursuant to 7 U.S.C. §499(e)(c), 7 C.F.R. Part 46, 49 Fed. Reg. 45735 (Nov. 20, 1984), through the invoices it sent with the produce. (D.I. 17 at 2.)

3

complaints from the brokerage business vendors that had not been paid for produce they shipped to Harvin Foods. *Id.* Harvin Foods notes that it had not done business with many of these vendors in the past. *Id.* Upon investigating the complaints, Harvin Foods learned that Maragni and Giuffrida were fraudulently ordering produce from growers and/or vendors on Harvin Foods' credit, but having brokerage business customers send their payment checks directly to them. *Id.* Harvin Foods then terminated its affiliation with Maragni and Giuffrida and filed a criminal complaint with the Wilmington Police Department to alert them of the fraudulent scheme. *Id.* at 3.

On May 14, 1999, Harvin Foods granted WSFS, a security interest in all of its accounts, inventory, equipment, specific property, records, securities, and proceeds. (D.I. 164, Ex. A). On November 13, 2013, Plaintiffs and WSFS came to an agreement to settle Plaintiffs' claims against WSFS for a total payment of $300,301.47. (D. I. 164 at 1). The settlement with WSFS allowed Plaintiffs to recoup the amount owed to them for their produce. *Id.* at 14. Plaintiffs seek to recover only interest and attorneys' fees from Mr. Harvin personally.

### III. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "could affect the outcome" of the proceeding. *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011). A genuine dispute exists "if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party." *Id.* The moving party bears the burden of proving that summary judgment should be granted. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585 n.10 (1986). The district court must view the evidence in

the light most favorable to the nonmoving party and draw inferences in that party's favor. *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007).

The mere existence of some evidence in support of the nonmoving party will not be sufficient for denial of a summary judgment motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Rather, the nonmoving party must present enough evidence to enable a jury to reasonably find for it on that issue. *Id.* The party opposing summary judgment must present more than just "mere allegations, general denials, or . . . vague statements" to show the existence of a genuine issue. *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir. 1991). The moving party is entitled to judgment as a matter of law if the nonmoving party fails to make a sufficient showing on an essential element of its case for which it has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## IV. DISCUSSION

The court has jurisdiction under 28 U.S.C. § 1331. This matter arises under the trust provision of the Perishable Agricultural Commodities Act. · 7 U.S.C § 499e(c)(2). That provision requires:

> [p]erishable agricultural commodities received by a commission merchant, dealer, or broker in all transactions, and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities of products, shall be held by such commission merchant, dealer, or broker in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers, sellers, or agents.

*Id.* If a merchant, dealer, or broker fails to make full payment promptly for a transaction in a perishable agricultural commodity, or fails to maintain the trust required by § 499e(c), that merchant, dealer or broker is liable to the producer for "sums owing in connection with" the commodity transactions. *See id.*

The court previously decided that, despite Maragni and Giuffrida's fraudulent scheme, they were acting as agents of Harvin Foods, Plaintiffs relied in good faith on the belief that they were authorized Harvin Foods buyers, and Plaintiffs preserved their interest in the PACA trust pursuant to 7 U.S.C. § 499e(c)(4). *See* (D.I. 53 at 7). While the court indicated that Plaintiffs were likely to succeed on the merits of their claim that they were entitled to payment from Defendants under PACA, (D.I. 53 at 7), the court never explicitly decided that Harvin Foods failed to pay for Plaintiffs' perishable agricultural commodities or that Harvin Foods failed to maintain the trust.[2] At this stage, however, it is undisputed that Harvin Foods failed to pay Plaintiffs' for the perishable commodities, and that Harvin Foods failed to maintain the trust. Outside of Plaintiffs undisputed Statement of Facts in their opening brief, (D.I. 164 ¶¶ 1–12), the parties do not even brief that issue. *See* Fed. R. Civ. P. 56(e) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: . . . (2) consider the fact undisputed for purposes of the motion . . . ."). The court, therefore, is left to decide whether Mr. Harvin is subject to personal liability for Harvin Foods failure to maintain the trust, and whether Plaintiffs can recover attorneys' fees and interest as part of their PACA trust claim.

### A. Individual Liability

PACA "was 'designed primarily for the protection of the producers of perishable agricultural products—most of whom must entrust their products to a buyer or commission merchant who may be thousands of miles away, and depend for their payment upon his business acumen and fair dealing.' " *Tom Lange Co. v. KornBlum & Co.*, 81 F.3d 280, 283 (2d Cir. 1996) (quoting H.R. Rep. No. 84–1196 (1955), *reprinted in* 1956 U.S.C.C.A.N. 3701, 3701). Because

---

[2] Though the court granted Plaintiffs' motion for default judgment as to Harvin Foods, Harvin Partners, Harvin Properties, and KH Foods, Default Judgment is not a decision on the merits of the action.

of the perishable nature of fresh fruits and vegetables, PACA places a duty on buyers to "hold sufficient PACA trust assets in trust to pay all suppliers." *Consumers Produce Co. v. Volante Wholesale Produce, Inc.*, 16 F.3d 1374, 1379 (3d Cir. 1994). If a buyer breaches that duty, liability will attach to the buyer, but, "[i]f the [buyer's] assets are insufficient to satisfy the liability, others may be found secondarily liable." *Shepard v. K.B. Fruit & Vegetable, Inc.*, 868 F. Supp. 703, 706 (E.D. Pa. 1994); *see Bear Mountain Orchards, Inc. v. Mich-Kim, Inc.*, 623 F.3d 163, 167 (3d Cir. 2010).

PACA does not mention individual liability. The Third Circuit has, however, found PACA buyers individually liable based on common law breach of trust principles. *Weis-Buy Servs., Inc. v. Paglia*, 411 F.3d 415, 421 (3d Cir. 2005). In *Weis-Buy*, the Third Circuit synthesized the precedents of other circuits that already decided the issue "and concluded that 'individual shareholders, officers, or directors of a corporation who are in a position to control PACA trust assets, and who breach their fiduciary duty to preserve those assets, may be held personally liable under the Act.'" *Id.* (quoting *Sunkist Growers, Inc. v. Fisher*, 104 F.3d 280, 283 (9th Cir. 1997)); *see Patterson Frozen Foods, Inc. v. Crown Foods Int'l, Inc.*, 307 F.3d 666, 669 (7th Cir. 2002) (holding that PACA producers can recover from both the corporation and its controlling officers when a buyer breaches PACA trust rights); *Golman-Hayden Co. v. Fresh Source Produce Inc.*, 217 F.3d 348, 351 (5th Cir. 2000) ("[I]ndividual shareholders, officers, or directors of a corporation who are in a position to control trust assets, and who breach their fiduciary duty to preserve those assets, may be held personally liable under PACA.").

In a later opinion, the Third Circuit devised a test to determine a buyer's individual liability under PACA:

> 1) determine whether an individual holds a position that suggests a possible fiduciary duty to preserve the PACA trust assets (e.g., officer, director, and/or

7

controlling shareholder); and 2) assess whether that individual's involvement in the corporation establishes that she was actually able to control the PACA trust assets at issue.

*Bear Mountain*, 623 F.3d at 172. In *Bear Mountain*, the court analyzed whether the officer at issue was involved in the day-to-day business decisions of the corporation. *Id.* at 173. The court reiterated that formal title alone is insufficient to determine if a person exercised control over the trust assets. *Id.* at 172. Instead, courts must conduct a case-by-case analysis to determine the role of the individual in the corporation. *Id.* Additionally, an individual cannot be held liable unless that individual is responsible, in some way, for failing to preserve the trust assets for the beneficiaries. *Food Team Int'l, Ltd. v. Unilink, LLC*, 595 F. App'x 146, 149 (3d Cir. 2014).

Normally, such a fact-intensive inquiry would be inappropriate at the summary judgment stage. Here, however, no reasonable jury could find that Mr. Harvin did not hold a position that suggests a fiduciary duty to preserve the trust assets, or that he was not actually able to control the trust assets at issue.

Mr. Harvin offered no facts to dispute that he was the president of Harvin Foods, (D.I. 21 ¶ 2), he was the sole owner of Harvin Foods, (D.I. 153 ¶ 5(e)), he was the sole principal reported on Harvin Foods' PACA license, (D.I. 18, Ex.2), and he granted a security interest in the assets of Harvin Foods to Wilmington Savings Fund Society Bank ("WSFS"). (D.I. 164, Ex. A at 7). The court finds that Mr. Harvin had a duty as the sole owner and president to preserve the PACA trust assets. The court also finds that Mr. Harvin was actually able to control the PACA trust assets at issue.

This situation is wholly dissimilar from the one presented in *Bear Mountain* where, despite her title as an officer of the corporation, the defendant was not held personally liable under PACA because she was not involved in any of the major business decisions. *Bear Mountain*, 623

8

F.3d at 173. Here, Mr. Harvin granted WSFS a security interest in all the accounts, inventory, equipment, specific property, records, additional securities, and proceeds of Harvin Foods. (D.I. 164, Ex. A). PACA trust assets are defined as "[p]erishable agricultural commodities received by a commission merchant, dealer, or broker in all transactions, and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products." 7 U.S.C § 499e(c)(2). Because Mr. Harvin was able to grant WSFS a security interest in, among other things, Harvin Foods' inventory, and because Harvin Foods' inventory indisputably contained perishable agricultural products, he necessarily exercised control over trust assets.

Mr. Harvin breached his fiduciary duty under PACA because he failed to preserve or turn over trust assets when payment was due to Plaintiffs. *See Morris Okun, Inc. v. Harry Zimmerman, Inc.*, 814 F. Supp. 346, 348 (S.D.N.Y) (finding that PACA imposes liability on a trustee, whether a corporation or officer of a corporation, who uses the trust assets for any purpose other than repayment of the supplier); *see also* 7 C.F.R. § 46.46(e)(1) (stating that merchants "are required to maintain trust assets in a manner such that assets are freely available to satisfy outstanding obligations to seller of perishable commodities"). Because Mr. Harvin had a fiduciary duty to preserve the trust assets, the ability to actually control those assets, and he failed to turn over the trust assets, he can be held personally liable under PACA for "fail[ing] to maintain the trust" and for "fail[ing] . . . to account and make full payment promptly" for Plaintiffs' perishable commodities. 7 U.S.C. § 499b(4).

**B. Unpaid Interest and Attorneys' Fees**

PACA requires that merchants, dealers, and brokers create a trust for the benefit of unpaid suppliers. 7 U.S.C. § 499e(c)(2). Failure to maintain the trust is unlawful, and PACA entitles

9

supplier's to recover "full payment of the sums owing in connection with . . . [perishable commodity] transactions." *Id.* The court is asked to decide whether § 499e(c)(2) allows suppliers to recover attorneys' fees and interest as part of their PACA trust claims.

supplier's to recover "full payment of the sums owing in connection with . . . [perishable commodity] transactions." *Id.* The court is asked to decide whether § 499e(c)(2) allows suppliers to recover attorneys' fees and interest as part of their PACA trust claims.

Attorneys' fees can be awarded if there is a statutory or contractual basis for them. *In re Fleming Companies, Inc.*, 316 B.R. 809, 815 (D. Del. 2004). The relevant section of the statute, 7 U.S.C § 499e, does not explicitly allow for the recovery of attorneys' fees and interest as part of a PACA trust claim. That section, however, also does not evidence any Congressional intent to foreclose the recovery of attorney's fees and interest. *Middle Mountain Land & Produce Inc. v. Sound Commodities Inc.*, 307 F.3d 1220, 1224 (9th Cir. 2002). The statute's language is broad, allowing sellers and producers to recover "full payment of sums owing *in connection with*" transactions in perishable agricultural commodities. § 499e(c)(2) (emphasis added). The legislative history for the amendment to PACA indicates that the Committee on Agriculture did not intend for the amendment to "interfere with the ability of the seller-supplier, and buyer-receiver to set contract terms." H.R. Rep. No. 98-543, 5 (1983). As the Ninth Circuit recognized, it is unlikely "that Congress, in enacting a statute to provide better insolvency remedies to perishable agricultural commodities sellers, wanted selectively to exclude legitimate portions of a covered contract from the scope of a PACA claim." *Middle Mountain*, 307 F.3d at 1224. PACA, therefore, does nothing to curtail buyers' and sellers' rights to contract for payment of attorneys' fees and interest in the event that one party fails to pay for the commodities. *See Fleming*, 316 B.R. at 816.

In many of the PACA cases where attorneys' fees and interest claims are in dispute, those terms will be included on the invoice for the perishable agricultural products. *See Fleming*, 316 B.R. at 816; *Middle Mountain*, 307 F.3d at 1224. The Third Circuit has previously recognized that U.C.C. § 2-207 applies to terms on an invoice that accompany or follow the delivery of goods.

10

*Altronics of Bethlehem, Inc. v. Repco, Inc.*, 957 F.2d 1102, 1107 (3d Cir. 1992) (citing *Herzog Oil Field Serv., Inc. v. Otto Torpedo Co.*, 391 Pa. Super. 133, 570 A.2d 549 (1990)). Under U.C.C. § 2-207[3], "[a] definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon." Viewing the invoice as a written confirmation of an oral agreement, any additional terms on the invoice will become part of a contract between merchants unless: "(a) the offer expressly limits acceptance to the terms of the offer; (b) they materially alter it; or (c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received." § 2-207(2). Accordingly, courts in PACA cases are typically tasked with analyzing whether the terms on the invoice effected a material alteration to the oral contract. *See Fleming*, 316 B.R. at 816.

The core of the dispute here is whether the attorneys' fees and interest terms became part of Harvin Foods' contracts with Fresh Direct, Whitmore, and PPCB, or whether the terms constituted a material alteration. Champion also contends that, although attorneys' fees were not part of its contract with Harvin Foods, it is still entitled to interest payments. Mr. Harvin argues that the "unilateral issuance of invoices that contain attorneys['] fees and interest provisions that were never agreed to by [Harvin Foods] cannot be a basis" for summary judgment. (D.I 169 at 6). Mr. Harvin also contends that inclusion of the attorneys' fees and interest terms in a contract between Plaintiffs and Harvin Foods would result in surprise and undue hardship. *Id.* at 10. The court will address each of Mr. Harvin's arguments in turn.

---

[3] The court uses U.C.C. § 2-207 instead of any specific state commercial code because any state's law that could possibly be relevant to this action adopts the U.C.C. § 2-207 into its own commercial code verbatim. *See generally* Ariz. Rev. Stat. Ann. § 47-2207; Del. Code Ann. tit. 6, § 2-207; Cal. Com. Code § 2207; 13 Pa. Stat. and Cons. Stat. Ann. § 2207; Idaho Code Ann. § 28-2-207.

11

Mr. Harvin states that Plaintiffs' argument relies "solely on unilateral invoices, not bilateral contracts" to establish their entitlement to attorneys' fees an interest. (D.I. 169 at 7). According to Mr. Harvin, those terms cannot be the basis for judgment against him because Harvin Foods never agreed to them. *Id.* Mr. Harvin cites no case law for either proposition, however. In fact, a number of cases have found the opposite—invoices are properly analyzed under § 2-207 as written confirmation of a contract. *See Fleming*, 316 B.R. at 816; *Coosemans Specialties, Inc. v. Gargiulo*, 485 F.3d 701, 708 (2d Cir. 2007) (finding defendant's argument unpersuasive because, even though the attorneys' fees provisions on the invoices were never discussed or agreed upon, they were properly analyzed as proposals for addition to the contract under § 2-207).

In contrast to Mr. Harvin's original statement that there was no bilateral contract, he states later in his brief that "under the circumstances here present, a 'definite and seasonable expression of acceptance' was verbally provided when the orders were placed by [Harvin Foods] with the Plaintiffs." *Id.* at 9. Plaintiffs contend that "Mr. Harvin presents no evidence that Plaintiffs and Harvin Foods had previously existing contracts which Plaintiffs sought to modify by issuing invoices." (D.I. 170 at 9). Regardless of whether the invoice served as acceptance of an offer or whether the invoice served as a proposal for additional terms, U.C.C. 2-207 still demands the same outcome.

The comments to U.C.C. § 2-207 explain the circumstances that the section was drafted to address:

> where an agreement has been reached either orally or by informal correspondence between the parties and is followed by one or both of the parties sending formal memoranda embodying the terms so far as agreed upon and adding terms not discussed. The other situation is offer and acceptance, in which a wire or letter expressed and intended as an acceptance or the closing of an agreement adds further minor suggestions or proposals . . . .

12

§ 2-207, comment 1. Under § 2-207, "a proposed deal which in commercial understanding has in fact been closed is recognized as a contract." *Id.* at comment 2. Accordingly, any additional terms contained in the confirmation or acceptance are considered as proposals for addition to the contract, under § 2-207(2). There can be no genuine issue as to a *material* fact when the different factual scenarios necessitate the same conclusion—any additional terms to contracts between merchants will become part of the contract unless they materially alter it. Finding that there is no genuine dispute over the existence of a contract, and finding § 2-207 applicable to the inquiry here, the court advances to the material alteration analysis.

The court finds that there is no genuine dispute over the award of interest fees. The comments to § 2-207 explicitly state that "a clause providing for interest on overdue invoices" is an example of a clause that "involve[s] no element of unreasonable surprise and which therefore [is] to be incorporated in the contract." § 2-207, comment 5. Additionally, it is within the courts discretion to award prejudgment interest to PACA claimants under 7 U.S.C. § 499(c)(2). *See Middle Mountain*, 307 F.3d at 1226 (holding that district courts can award "reasonable prejudgment interest to PACA claimants" to effectuate the purpose of the statute and protect the interests of claimants); *Endico Potatoes, Inc. v. CIT Grp./Factoring, Inc.*, 67 F.3d 1063, 1071 (2d Cir. 1995) (finding that the decision to award prejudgment interest in PACA cases lies within the "broad discretion" of the district court); *Morris Okun, Inc. v. Harry Zimmerman, Inc.*, 814 F. Supp. 346, 351 (S.D.N.Y. 1993) (awarding prejudgment interest even when it was not in the contract because failing to make the award could "create a disincentive to prompt payment to suppliers and encourage collection litigation," contrary to congressional intent). The court will therefore award prejudgment interest at 18% per annum for Plaintiffs that included that term in their contract. For Plaintiffs that had no contractual interest term, or for Plaintiffs that included a term for prejudgment

interest on their invoices, but failed to state a rate, the court will award prejudgment interest at the statutory rate under 6 Del. C. § 2301.

The court also finds that Mr. Harvin has failed to demonstrate that a provision for attorneys' fees on Plaintiffs' invoices materially altered the contract for the perishable commodities. The issue of attorneys' fees can be decided as a matter of law. The undisputed facts of this case establish that a provision for attorneys' fees was clearly stated at the bottom of every invoice sent by eighteen of the twenty Plaintiffs. (D.I. 18, Ex. 3); (D.I. 19, Ex. 3); (D.I. 60, Ex. 1); (D.I. 73, Ex. 3). By the court's count, Harvin Foods received around one hundred invoices containing attorneys' fees provisions.[4] *Id.* Every attorneys' fee provision included almost identical language. *Id.* Given those undisputed facts, the court finds that the attorneys' fee provisions are more analogous to interest on past-due invoices than they are to any of the examples of material alteration listed in comment 4 to § 2-207. *See Rocheux Int'l of N.J., Inc. v. U.S. Merchants Fin. Grp., Inc.*, 741 F. Supp. 2d 651, 687 (D.N.J. 2010) ("A reasonable term for attorneys' fees, which presumes the need to take legal action to recover sums owed under contract, more closely

---

[4] Mr. Harvin states that "there is no evidence that [Harvin Foods] received any of [the invoices] before subsequent orders were placed." (D.I. 169 at 8). Mr. Harvin's contention is supported by one statement in his affidavit, "I do not know if or when [Harvin Foods] received invoices from Fresh Direct, Champion, Whitmore, and PPCB." (D.I. 169, Ex. A ¶ 4). Mr. Harvin's statement cannot qualify as a disputed, material fact precluding summary judgment. *See Anderson*, 477 U.S. at 249 (holding that "a genuine issue for trial exists if there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party").
Rule 56 requires that parties support their assertion that a material fact remains disputed by: (1) "citing to particular parts of materials in the record"; or (2) "showing that the materials cited do not establish the absence of a genuine dispute." Fed. R. Civ. P. 56(c)(1). Mr. Harvin cites only to an affidavit reiterating the same unsubstantiated, conclusory statement he makes in his brief. Every single invoice with an attorneys' fee provision states that the perishable commodities are to be shipped or sold to Harvin Foods at 620A Street, Wilmington, Delaware 19801. As previously stated, there is no genuine dispute that Harvin Foods received the perishable agricultural commodities and failed to pay for those commodities. Faced with the fact that Plaintiffs sent around one hundred invoices to Mr. Harvin, and the fact that Mr. Harvin does not dispute receipt of the corresponding produce, a jury would lack sufficient evidence from which it could reasonably concluded that Mr. Harvin did not receive the invoices. The court, therefore, does not believe that this is the type of *genuine* factual dispute that should preclude summary judgment.

resembles a term for interest on past-due invoices than any examples of material alteration provided by comment 4 to § 2-207.").

The language and purpose of PACA also support the court's decision to award attorneys' fees as a matter of law. Congress chose not to limit PACA claims solely to the price of the perishable commodities. 7 U.S.C. § 499e(c)(2). Instead, Congress allowed for "full payment in the sums owing in connection with [the] transactions." *Id.* The Act specifically notes that the reason for its inception was to reduce the burden on commerce in perishable agricultural commodities caused by financing arrangements where buyers, who have failed to pay suppliers for purchased perishable commodities, grant lenders a security interest in those commodities. *Id.* § 499e(c)(1). In some cases, lenders would have a superseding interest in the commodities, leaving suppliers with little recourse in the event that a buyer fails to pay.. *See* Explanation of the Regulations Under the Perishable Agricultural Commodities Act; Addition of Provisions to Effect a Statutory Trust, 49 Fed. Reg. 45,735, 45,738 (Nov. 20, 1984) (to be codified at 7 C.F.R. pt. 46). While the act does not declare that attorneys' fees are due to the supplier in every case under PACA, it is fair to assume that when attorneys' fees provisions are included on invoices between a buyer and supplier, such a provision cannot effect a material alteration to the contract. Such a finding would inflict a large burden on suppliers attempting to enforce their rights under PACA, rendering the act effectively toothless.

Lastly, U.C.C. § 2-207 states that clauses that materially alter the contract "result in surprise or hardship if incorporated without express awareness of the other party." U.C.C. § 2-207, comment 4. It would be illogical for the court to consider an interest fee provision—amounting to an award of $160,025.41 in interest payments—as a nonmaterial alteration under § 2-207, while finding an attorneys' fee provision—amounting to an award of $ 71,639.75—to be a

15

material alteration. For those reasons, the court finds as a matter of law that the attorneys' fee provisions did not materially alter the contract between Plaintiffs' and Mr. Harvin, making those provisions part of the contract for the sale of perishable agricultural commodities under § 2-207. Accordingly, Plaintiffs' that included such a provision on their invoices are entitled to reasonable attorneys' fees incurred in the effort to obtain payment for the perishable commodities sold.

## VI.     CONCLUSION

The court concludes that Plaintiffs have met their burden of demonstrating that there is no genuine dispute as to any material fact and that they are entitled to judgment as a matter of law. Accordingly, the court will grant Plaintiffs' motion for summary judgment pursuant to Rule 56.

Dated: March 30, 2017

UNITED STATES DISTRICT COURT JUDGE